I'm going to begin with issues 1, 3, and 5 in my brief. As you recall, there are six separate issues in the brief. Issues 1, 3, and 5 deal with a non-cash charitable contribution issue, which is common to all three sets of taxpayers in this case. Your Honors, the facts with respect to this issue are not in dispute. The remaining question is a purely legal issue. And that issue is, during the years at issue, did a reasonable cause exception exist to the heightened substantiation requirements of Section 170? We know that in the year 2004, a reasonable cause exception did exist because Congress spelled out such exception in legislation. That legislation was actually a codification of pre-existing law. Case law says that a reasonable cause are directory rather than mandatory, and that exceptions to those substantiation requirements exist. The Internal Revenue Service, in addition, has its own chief counsel advice memorandum, which is cited in our brief, where they make that admission. The case that I'm citing is called Bond v. Commissioner. In Bond v. Commissioner, the tax court employed something called the Doctrine of Substantial Compliance to say that a taxpayer was forgiven for not complying with the strict requirements of the substantiation requirements of Section 170. Now, I want to direct you to Apelli's brief at page 37. On page 37, Apelli cites a case called Sawyer v. County of Sonoma, which is a Ninth Circuit case. And Apelli's brief states, and I quote, the Doctrine of Substantial Compliance is an equitable doctrine designed to avoid hardship in cases where the party does all that can be reasonably expected, reasonably expected of him. The Doctrine of Substantial Compliance, which we know applies to this statute because the Bond case says so, the Doctrine of Substantial Compliance and the reasonable cause exception are very closely related and are based upon the same principle that a harsh result is not imposed where a taxpayer has done all that is reasonably expected of him. So, Counsel, in this case, what did he do in terms of valuing the various non-cash items? The taxpayers hired two separate tax professionals. I know that. And the tax professionals interpreted the statute to determine what needed to be done. There were two separate valuations that were done during the years at issue. However, we admit those valuations did not comply with the strict requirements of the statute. So if we accept your version of this argument, would we still need to remand to determine whether what the taxpayers did in this particular matter complied with what you suggest is the exception to the statute? Thank you, Your Honor. We do not. Well, why? It seems to me that it's certainly an evidentiary issue as to whether they complied. Even if there is such an exception, how could I on appeal determine that they've met the criteria? Those who had this in front of them to begin with did not have that opportunity. Well, the tax court has already answered that question for us. They addressed that issue when they determined that the penalties under Section 6662 do not apply because there exists reasonable cause in this case. The reasonable cause exception at Section 6662 is a universally accepted definition of that term. And there's case law cited in our brief where that definition of reasonable cause under Section 6662 is applied throughout the Internal Revenue Code to other penalty provisions. What we're looking at here in Section 170 is clearly a penalty provision. If the reasonable cause exception doesn't apply, then an extremely harsh result occurs in this case. The government admits that the gifts in this case were valuable and were made to valid charities. The government seeks to take away a charitable deduction to which the taxpayers would otherwise qualify simply because their tax professionals which they were. Congress did not intentionally create a trap for the unwary when it passed Section 170. Clearly, the legislation to both the 1984 Act, that's the DEFRA Act, and the legislative history with respect to 2004, the legislative history clearly shows that Congress intended for reasonable exception, reasonable cause exception to apply. I guess you only get to legislative history if you read the law and it's ambiguous. If I read the law under 170A, passed in 2000, it says that charitable claim is only allowable if allowed and verified by the regulations prescribed by the Secretary. Then if I read the regulations which were written by the Secretary, they said that the IRS retained the authority to waive the substantiation requirements at their discretion. And in this particular matter, they didn't. So if I read the clear language of the statute, it isn't there. The only way you give me the legislative history is to say this is ambiguous. Well, I think the Bond case itself says this is ambiguous. The Bond case read its own exception into the statute, which isn't in the black letter of the law. That exception is almost identical to the reasonable cause exception. I'd like to move to issue number two of appellant's brief. Issue number two has a unique set of facts that are specific to one set of taxpayers. And the facts of issue two are laid out in the brief, so I'm not going to waste the Court's time with laying those facts out again. Because the question here is not a factual one. It's a legal issue or an application of law to fact. And that question is, did the U.S. Tax Court use a subjective test rather than an objective test for determining whether a settlement had occurred? Both parties agree that the Court should have employed an objective test. To begin this argument, I want to clarify that the tax court is a very unique court in that it enforces oral settlements. It's different than the federal district courts, which would require a settlement to be either in writing or on the record. Case law within the tax court says oral settlements are acceptable. I want to draw your attention to the tax court opinion document and look at the reasoning that the tax court employed for saying that there is not a settlement in this case. The tax court stated, Mr. Carragher, that's the IRS attorney, wasn't aware of the specifics of the settlement offer. That fact is irrelevant. It's only a relevant fact if that fact is conveyed to the appellant's attorney on or before the day of settlement. The government doesn't argue that that fact was somehow conveyed to appellant's attorney at the time that these settlement conversations occurred. Instead, it was reasonable for appellant's attorney to believe that Carragher, the IRS attorney, had reviewed the offer. Why is that reasonable? Look at the regulation that we've cited in our briefs. That regulation specifically says that IRS appeals loses jurisdiction to settle a case at the latest six months after the case is initiated. That date would have been January 27, 2006, which means for 23 days, according to that regulation, the files had already been returned to IRS counsel. It's certainly reasonable to think that he's going to look at the file and look at the most important letter in there, which is the settlement. The next fact that the IRS relies upon, I'm sorry, that the tax court relied upon was the IRS attorney's response to appellant's attorney was his, quote-unquote, understanding of the, quote-unquote, intent or actions of the appeals officer. Again, this is a purely subjective fact that the tax court judge is relying upon. If this fact is never, is not in the settlement discussion, then it has no bearing on whether or not a settlement actually occurred. The understanding and the intent of the appeals officer and the IRS attorney in this case have nothing to do with the objective test. Again, you look at that ---- I disagree with your analysis on subjective and objective. Is this a particular case that we have a factual issue and dispute as to whether there's a settlement? Yes. If this Court determines that the tax court used a subjective test or looked at subjective factors, this would need to be remanded to the tax court with the instruction to look at the objective factors. You've got about 13 seconds left. Do you want to save some for rebuttal? I will. I'll just save my third issue, then. I'll rely on what's in the briefs. All right. Thank you. Lawyer from the government. Good morning, and may it please the Court. As to the first issue raised by Appellant ---- Could you raise your microphone up just a little bit? Thank you. As to the first issue raised by Appellant having to do with a reasonable clause exception to the substantiation requirements, Bond spells out an equitable doctrine of substantial compliance, which is a judicial doctrine that was litigated below, before the tax court. The tax court rejected the substantial compliance  and they have not appealed it. It's not properly before this Court. Now, we would say that what they're arguing for is something very different, not substantial compliance meeting the essence of the statute. They're arguing for an exception from compliance at all, which would be the reasonable clause exception, which needs to be statutorily granted. I think what they were arguing in Bond was that Bond, to reach the conclusion in Bond, one had to conclude that the statute was ambiguous, and therefore, one had to turn to legislative history. That's part of the rationale, as I understood it today. Well, then we would suggest that the statute is not ambiguous. DEFRA Section 155 Right. Let's go back. Do you think that Bond stands for that proposition? No, I don't. No, I don't, Your Honor. I think that Bond stands for the idea that when a taxpayer complies, the facts in Substantial compliance is not, you know, meeting one or two requirements. Admittedly, it's a fairly extensive regulation. I think there are 10 or 12 requirements that you have to put on an appraisal summary as well. You have to get a qualified appraisal. The appraiser needs to be qualified. Now, in meeting those requirements in Bond, he did everything that the taxpayer is required to do under the regulation, save for getting the actual qualified appraisal that includes the appraiser's qualifications on it. So all the information that the IRS needs in order to monitor overvaluation abuse, which is what DEFRA 155 is really designed to combat, all of those things, the IRS could determine whether there was an overvaluation abuse or not. And, in fact, I think the IRS in that case conceded that there was no dispute as to the valuation. The valuation was legitimate. And so the issue in Bond was that the Court said that under equitable, applying equitable principles, that the taxpayer was entitled to the deduction based on a significant noncompliance, an incidental issue of noncompliance. Now, in this case, there's no question that noncompliance was significant. There was no qualified appraisal here. And, in fact, there's an issue as to whether taxpayers did overvalue the property. And, Your Honor, I believe you made reference to it. There was a dispute litigated below as to what the proper valuation of the charitable contributions would be. And that issue, the tax court never needed to decide because it decided that there was no reasonable cause exception to the statute. Do you think, moving on to another topic, do you agree with the taxpayers that the reasonable cause determination under 6662 is coextensive with the findings that are under 170? No, I don't, Your Honor. And tell me why. I think there are principally – well, there are two reasons. One is that the 6664 reasonable cause exception specifically relates back to 6662 and 6663, which would be penalty provisions. Now, Section 170 is a deduction provision. They exist – deductions and penalties exist for very different reasons, which leads me to my second point, which is that a deduction is to taxpayers' benefit. It is reasonable for Congress to expect strict compliance with those because they're bestowing a benefit upon the taxpayers. Now, when it comes to a penalty, penalties are designed to thwart particular behaviors, people who take unreasonable positions on their tax returns with the hopes that they don't get audited because they know that hundreds of millions of people are filing tax returns, and some of those people are going to be able to get away with things. It is the taxpayer roulette concept. Now, it is – that is a factually intensive question as to whether somebody took an unreasonable position and pressed the envelope with the hopes that they wouldn't get audited. And so, therefore, there is more deference paid to or there is more scrutiny paid to the taxpayer's position in a penalty context than is entitled to a deduction context. And so, Your Honor, I think the reasonable cause exception not only in 664 doesn't apply because it specifically relates to statutes not at issue for the deduction, but also – The short answer for our purposes is if we got that far in the case, do you think it would be – we would have to remand for a determination? I would. And just to remind the Court that there are proposed regulations that I think were proposed regulations with respect to the reasonable cause exception that was created by the AJCA in 2004. And those regulations bear no resemblance to reasonable cause exception that exists under 6664. Okay. And unless there are any other questions for the Court, then we will – Well, I guess the one question I thought you might answer, if, in fact, I guess I'm trying to figure out how the tax court could have reached a settlement or reached its decision about a settlement with the Commissioner in – regarding the 2002 issues without a hearing. I think that the short answer is that I don't believe the taxpayers asked for a hearing. They filed a motion to enforce the settlement. They attached an affidavit as well as particular other documentary evidence. We responded. And I think it would – the Court, in its discretion, didn't ask for a hearing. Now – But there were certainly – or can we suggest – I mean, I guess I'm reading. I can't find that there aren't disputed issues of fact. Oh, certainly. I would agree with that, Your Honor. And I think that there's – And so how do they make the ruling without a hearing? Well, I think that there are two reasons. One is that looking to the full set of circumstances. This is a typical, you know, he said one thing, no, he didn't. He said another thing. And I think that's clearly laid out in the Court's opinion. It says – Well, especially in the tax court context where settlements are subject to less formal requirements. And oral settlements are easily enforced. I wouldn't – well, I guess in answer to your question, again, I would return back to the fact that I don't think that there was a specific request. Why does that matter? Sorry? Why does that matter for us? I mean, because – I think that matters because – If we say they're factual issues and you need to have a hearing, it really doesn't necessarily matter whether it was requested or not. I mean, I suppose you could argue a waiver, but that's a question we're raising in the first instance. Understood. I think that it matters because – because even on documentary evidence, it's still a factual determination by the tax court. And the tax court is entitled to deference by this Court. Why is a – why is the tax court in any better position than we are to determine facts based purely on evidentiary submissions by affidavit? Because – because Rule 50 – We're talking about paper. Yeah, no, I understand. You're right. We have the same paper. So why should we give – why – you know, I mean, the other – the other side of the coin is if the tax court chooses to do that, maybe it's a noble review. I don't think that's right, Your Honor, because Rule 52a of the Federal Rules of Civil Procedure specifically says an appeals court needs to give deference to the trial court in issues and determinations of findings of fact. And in Anderson v. City of Bessemer, Supreme Court case from 85, the Supreme Court said, even though it acknowledged your argument that you're making right now, I believe, Your Honor, the point that – I'm not making an argument. I'm just – Okay. Well, the point that the appeals court seemingly is in the same position as a – as a trial court when it comes to determinations on paper. Are we – What – what difference – I mean, not to – But – What difference for us to take a look at the affidavits and decide whether there's a settlement or not or the tax court judge? I think ultimately – and I say I'm running out of time, so I'll try to be as direct as possible – is that because Congress said that the appeals court is required to defer to the trial court on these issues under Rule 52a of the Federal Rules of Civil Procedure, and just to add the one additional point, is that Sections 7482 of the Internal Revenue Code requires that appeals courts review types of tax court's decisions to the same extent and in the same manner as they do district courts. And there's your answer. So what's the difference from saying, look, you didn't undertake a factual analysis, you didn't do – make true findings of fact, you need to have a hearing? I – That's a different concept. I respectfully disagree in terms of the fact that you can't make true findings of facts on a paper record. I guess ultimately – You can if they're undisputed, but if you have a classic situation where the case is undisputed on whether or not a settlement exists, it's really hard for me to see how you can say, okay, I believe the government, I don't believe the taxpayers are trying. I think looking at the – if you just look at the two competing affidavits, I think that your argument might have some currency, but here there are tremendous numbers of circumstantial evidence that weigh in favor of the Commissioner's position here, is that, you know, the fact that the IRS counsel wasn't involved in negotiations, didn't know the existence of the letter, didn't receive the letter, the fact that taxpayers' counsel had called the appeals office twice subsequent to the supposed conversation on February 21st to inquire as to the status of negotiations, the fact that IRS counsel had said that appeals still had the case and it had not been referred back to him yet, and the fact that under Revenue Procedure 8724, that when the appeals has the case, they have sole jurisdiction on which to enter into settlement. I think – oh, and in addition, one additional point that the tax court did raise and so I want to mention, is that there was no letter of confirmation from taxpayers' counsel saying, you know, just to memorialize our understanding on a phone call yesterday, we entered into a settlement. None of those things were in this case. All of that suggests that if the taxpayer – if the tax court had a question as to, you know, as to which way to untangle the competing factual accounts of the conversation, then perhaps it would have. But I think the tax court, reasonably so, decided that that was unnecessary in this case. Thank you, counsel. Thank you, Your Honor. We'll hear rebuttal. Thank you, Your Honors. I just want to point out, there's certainly – there are two minutes on the clock. Yeah, we'll give you two minutes. There were repeated requests for a hearing on this settlement issue. There's both a motion to compel settlement and a supplemental motion to compel settlement, and in both cases, there are hearings that are requested from the tax court.  I'd also like to point out that in the brief that we have here, in the brief of Appellant, and here today, he's again cited to Rev. Proc. 8724 for guidance that the appeals officer had settlement jurisdiction. Let me ask you a question, and this is a practical one. Even if you could have a hearing, it didn't seem to me that anything in your brief suggests you want to go back to have one. Do you want to go forward on another issue? That's my worry. If we ordered a hearing, that's going to be more time for you after a long, complex struggle. Well, that's not a concern that I have. I'd love to go back to the tax court. Certainly, there are facts in the record that could lead this court to come to its own decision. The March 2 transcript where the IRS attorney states over and over the word settlement, in fact, I think he says, the issue we thought we had a settlement on, the issue we thought we had a settlement on, you and I, we do. He's clearly admitting there that there was a settlement made in the previous phone call, which he's trying to retract at that time. Certainly, this court could make the decision by itself. We asked for the hearing. The tax court didn't give it to us. For purposes of our brief, we noted that and said that that certainly goes to the burden of proof in this case and that it would be de novo review. The fact that there was no hearing is huge as far as how much deference to give to the U.S. tax court on this issue. The final note that I'll make is with respect to the Bond case and those issues 1, 3, and 5, which I talked about first, that case stands for a lot. I mean, one of the propositions it stands for, it's a very basic level, it stands for the proposition that there are exceptions that exist to this statute and that this is a directory rather than a mandatory statute. And if you don't follow it word for word, every I dotted, every T crossed, you can still qualify for the charitable contribution deduction. To do anything different would create such a harsh result. This clearly is a penalty provision. And therefore, the reasonable cause exception, which is employed universally throughout the penalty provisions of the Internal Revenue Code, clearly applies in this case. And the legislative history says it applies. The Bond case suggests it applies. And the statute, as it was amended in 2004, undeniably says the reasonable cause exception applies in this case. Thank you. Roberts. Thank you, counsel. The case is argued to be submitted for decision.
judges: Fletcher B. , Thomas, Smith N. R.